IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED
**June 30, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**KIMBERLY D.,**
**Respondent Below, Petitioner**

**v.) No. 25-ICA-366**    (Fam. Ct. Roane Cnty. Case No. FC-44-2025-D-34)

**CLARK D.,**
**Petitioner Below, Respondent**


**MEMORANDUM DECISION**

Petitioner Kimberly D.[1] ("Wife") appeals the Family Court of Roane County's August 13, 2025, Order Regarding Property Settlement and Parenting, and its September 8, 2025, Order Denying Motion for Reconsideration. Respondent Clark D. ("Husband") filed a response.[2] Wife filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decisions but no substantial question of law. For the reasons set forth below, a memorandum decision vacating the family court's orders and remanding the matter for further proceedings is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Based upon the limited record on appeal, the facts of this case are relatively sparse. According to the August 13, 2025, order on appeal, the parties were divorced by order dated May 28, 2025. The family court ordered Husband to pay Wife $1,104.44 per month in child support for the parties' two minor children.[3] This appeal arises from the bifurcated final hearing on equitable distribution and parenting held on August 12, 2025, at which Husband appeared pro se, and Wife appeared in person and by counsel.

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Both parties are self-represented.

[3] The parties also share another child who had reached the age of majority by the date the divorce was granted.

During that hearing, the family court heard testimony from both parties, the proffer and argument of Wife's counsel, and took evidence. At the conclusion of the hearing, the court announced that it would make its ruling and distribute the resulting order. The next day, on August 13, 2025, the family court entered its Order Regarding Property Settlement and Parenting. The August 13, 2025, order contains the following findings of fact relevant to this appeal:

3. That upon the evidence elicited and from a review of the Parties' financial disclosures lodged in the file, the Court finds that the Parties have accumulated real and personal marital properties, and marital debt as follows:

a. Five-acre tract of land where the marital home is currently located. The Poca Valley Bank valued the home at $98,000, and the current amount due on the loan is $79,500.

b. Thirty-five acres that adjoin the property where the marital home is located. The parties purchased the property for $40,000 and the current loan amount due is $27,000. The loan on that plot is in [Husband's] name and the deed is in both parties' names. A section of this property makes up part of the yard for the five acres with the marital home.

c. The parties purchased a mobile home that is approximately 35 years old and in bad repair. It was set up on real estate owned by the parties' children and will not be considered for purposes of equitable distribution.

d. [Wife] has a Toyota Tacoma that has a $30,000 debt attached to it and she makes the payments and pays the insurance.

e. [Husband] had a 2014 Ford Edge, which he has sold.

f. [Husband] withdrew the money from his retirement account in the amount of $15,274, which was part of the marital estate. He testified that he paid off the parties' credit cards with the money.

g. The parties agree that the children will have communication and parenting time with their father at the children's discretion.

h. The children previously testified that they did not wish to have contact with their father at this time. Each parent should encourage the children to have a positive relationship with the other parent.

i. The wife currently has student loan(s).

j. The parties' adult child also has student loan(s), which she can be responsible for.

k. The parties own a four-wheeler and a side by side.

l. Husband requested part of the 35-acre tract adjoining the marital home. Nevertheless, Wife was previously granted a domestic violence protective order and fears for her safety if Husband were to reside on the property adjoining her property.

The August 13, 2025, order includes several general conclusions of law, and makes the following orders relevant to this appeal:

1. The equitable distribution of the marital property identified and classified hereinabove and within Exhibit "A" attached hereto, and incorporated herein, shall be awarded to and from each Party in accordance with the Court's Findings of Facts and consistent with said Exhibit "A" attached hereto, which are hereby adopted by the Court.

2. As part of equitable distribution Wife shall pay to Husband the amount of $8,363.00 in monthly installments of five hundred dollars ($500) to begin October 1, 2025.

3. Wife shall be responsible for her student loans. Neither party is responsible for paying the adult child's student loans.

4. Husband shall have sole use and possession of the side by side. Wife shall have sole use and possession of the four-wheeler.

. . .

7. The Parties shall execute and deliver forthwith any deeds, titles or other documents as are necessary to give full effect to the provisions of this Final Divorce Decree and the equitable distribution made herein.

As noted, the order incorporates as Exhibit A the family court's equitable distribution worksheet that identifies the parties' marital assets, marital debts, and the court's distributions thereof. The worksheet reflects the court's calculation that the marital estate had a total of $138,000 in assets between the value of the 5-acre parcel ($98,000) and the value of the 35-acre parcel ($40,000), and its calculation of the marital debt at $106,000 between the amounts owed on the 5-acre parcel ($79,000) and on the 35-acre parcel ($27,000). The worksheet lists Wife's distributed assets as the 5-acre parcel at $98,000 and the 35-acre parcel at $40,000, for a total value of $138,000 of distributed marital assets. The worksheet lists Husband's only distributed asset as the value of his retirement account at $15,274 (which was not identified as a marital asset elsewhere on the worksheet). The worksheet lists Wife's distributed debts as the amounts owed on the 5-acre parcel ($79,000) and on the 35-acre parcel ($27,000), for a total of $106,000 in distributed debt, while Husband's distributed debt is listed as $0. In the marital distribution payout section, the worksheet denotes that Wife received a distribution of $32,000 and Husband received a distribution of $15,274. The worksheet concludes that based on the foregoing calculations, Wife must pay Husband an equalization payment of $8,363.[4]

---

[4] Notably, neither party's appendix on appeal includes their financial disclosures or copies of any other documentation submitted to the family court regarding the marital property at issue.

3

Sometime after the entry of the August 13, 2025, order, Wife filed a motion to reconsider the court's ruling.[5] On September 8, 2025, the family court entered an order denying Wife's motion to reconsider, stating that a party cannot ask the court to change its mind through reconsideration or relitigate factors the court has already ruled on. It is from the August 13, 2025, and September 8, 2025, orders that Wife now appeals.

When reviewing the order of a family court, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Wife argues that the family court erred in its equitable distribution in multiple instances, including by incorrectly valuing marital real property, by failing to consider certain marital assets and debts, and by awarding Wife possession of a four-wheeler she did not request and does not want. Further, she contends that the family court's August 13, 2025, order fails to make a formal custodial allocation for the parties' two minor children.

More specifically, Wife alleges that the court erred by assessing the value of the marital home based solely on Husband's unsupported testimony rather than in reliance on any documentary evidence. Wife asserts that the court valued the 5-acre parcel with the marital home at $98,000 based on Husband's unsubstantiated statements that the bank appraised the home at that amount. Wife alleges that even if there were a bank appraisal in that amount, the home could not be sold for that amount due to serious problems that affect its value.[6] Wife further asserts that she and Husband purchased the house for only $80,000,

---

[5] Again, we note that neither party included Wife's motion for reconsideration in the appendix record, and as such, we cannot ascertain the grounds Wife raised for reconsideration before the family court.

[6] For example, Wife claims that the home has no source of running water because the well does not produce water and the home is not connected to city water. Accordingly, the parties must haul water to the home from the fire department. Wife also asserts that the home needs a new furnace.

which included $5,000 for closing costs by agreement of the sellers. Otherwise, Wife avers that the house and its 5-acre parcel have consistently sold for approximately $75,000 at each of the last several sales.

Wife also argues that the court erred in the equitable distribution of the marital assets when it failed to attribute the value of Husband's 401(k), the side-by-side, and his 2014 Ford Edge, which he sold during the divorce, as marital assets awarded to Husband. Similarly, Wife asserts that the court erred by awarding her the four-wheeler, an asset she does not want, particularly because it carries an outstanding loan solely in Husband's name and he was not assigned the debt. Wife claims that she has been unable to obtain financing to take over the debt for the used four-wheeler and that the award of the vehicle presents a hardship for her.

In response, Husband does not argue in support of the family court's distribution of assets. Instead, he suggests a renegotiation of the distribution, stating he would forfeit the $8,363 the family court ordered Wife to pay him if the family court would instead award him possession of the 35-acre parcel and its $27,000 debt, or if the family court would partition the 35-acre parcel into a 9-acre parcel that he would take, and a 26-acre parcel that Wife would take. Husband also suggests he would take possession of the four-wheeler and make the remaining payments on its loan if the family court partitions the 35-acre parcel and awards him the 9 acres he requests.

Upon review, we conclude that the August 13, 2025, order lacks the essential detail and explanation of its reasons for distributing the marital property in the manner it adopted. West Virginia Code § 48-7-106 (2001) provides:

> In any order which divides or transfers the title to any property, determines the ownership or value of any property, designates the specific property to which any party is entitled or grants any monetary award, the court shall set out in detail its findings of fact and conclusions of law, and the reasons for dividing the property in the manner adopted.

*See also* Syl. Pt. 2, *Somerville v. Somerville*, 179 W. Va. 386, 369 S.E.2d 459 (1988); Syl. Pt. 5, *Burnside v. Burnside*, 194 W. Va. 263, 460 S.E.2d 264 (1995). Here, although the August 13, 2025, order contains some findings of fact and conclusions of law, they do not adequately address the equitable distribution of the parties' marital property. For example, the findings of fact include a description of Wife's Toyota truck, the debt attached to it, and that she makes the payments and pays the insurance. However, the truck and its debt are never addressed again—the order does not account for the truck as marital property or classify it as an asset or a debt. Similarly, the findings of fact refer to Husband's "2014 Ford Edge, which he has sold[,]" but this vehicle is never mentioned again either. The order contains no discussion regarding the sale amount, the date of the sale relative to the parties'

5

separation, or any classification of the car or the sale proceeds as marital or separate property.

As another example, the order's findings of fact include a statement that Husband cashed out his retirement account and testified that he used the proceeds to pay off marital credit card debt. With no further discussion or analysis, Exhibit A to the order attributes the value of Husband's retirement account as Husband's sole asset and Husband's marital distribution payout. This may imply that the family court did not find Husband's testimony credible that he used the retirement proceeds to pay off joint marital debt, but without explicit findings on this issue, we cannot determine the family court's rationale.

As a final example, the findings of fact describe the parties' four-wheeler and side-by-side as existing vehicles owned by the parties, but the order omits any outstanding loan on the four-wheeler. Furthermore, the family court's worksheet omits both vehicles entirely when showing the calculation and distribution of marital assets and debts.

These examples are not intended to be an exhaustive list but are indicative of the insufficiency of the family court's findings of fact and conclusions of law concerning the equitable distribution process. For this Court to properly review a family court order,

> "[t]he order must be sufficient to indicate the factual and legal basis for the [family court's] ultimate conclusion so as to facilitate a meaningful review of the issues presented." *Province v. Province*, 196 W. Va. 473, 483, 473 S.E.2d 894, 904 (1996); *see also Nestor v. Bruce Hardwood Flooring, L.P.*, 206 W. Va. 453, 456, 525 S.E.2d 334, 337 (1999) ("[O]ur task as an appellate court is to determine whether the circuit court's reasons for its order are supported by the record.") "Where the lower tribunals fail to meet this standard – i.e. making only general, conclusory, or inexact findings – we must vacate the judgment and remand the case for further findings and development." *Province*, 196 W. Va. at 483, 473 S.E.2d at 904.

*Collisi v. Collisi*, 231 W. Va. 359, 364, 745 S.E.2d 250, 255 (2013). In other words, courts must "show their work" by making the necessary findings to support and thoroughly explain how they reached their legal conclusions. *See In re R.M., B.M., and H.M.*, 252 W. Va. 422, 923 S.E.2d 352 (2025) (Ewing, J., joined by Hutchison, S.S.J., concurring). Accordingly, we must vacate the August 13, 2025, order and remand the matter to the family court for entry of an order containing findings of fact and conclusions of law sufficient for meaningful review. In its order, the family court must thoroughly address the equitable distribution process[7] and an analysis of its reasoning.

---

[7] The Supreme Court of Appeals of West Virginia ("SCAWV") has held that "[e]quitable distribution . . . is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third

6

Finally, Wife contends that, although the August 13, 2025, order appropriately set Father's parenting time to occur at the minor children's discretion, the court did not make a formal ruling as to custodial allocation. Wife states that she seeks a grant of full custody of the children in light of the previous domestic violence restraining order and the children's testimony that they are afraid of Husband and do not want to see him. Husband does not dispute that the August 13, 2025, order fails to make a custodial allocation, and further states that he would like the family court to grant him regular visitation and that he be permitted to claim one or both of the minor children on his income taxes.

Upon review, the August 13, 2025, order merely sets forth two findings of fact purporting that the parties have agreed that the children will have communication and parenting time with Husband at the children's discretion, and that the children previously testified they did not wish to have contact with Husband.[8] The family court did not discuss any proposed parenting plans or the rebuttable presumption of equal 50-50 custodial allocation pursuant to West Virginia Code § 48-9-102a (2022). Moreover, despite leaving Husband's parenting time at the children's discretion, the family court failed to make findings concerning the relevant factors from West Virginia Code § 48-9-209 (2024), or how it would construct a parenting time schedule maximizing both parents' time with the children as required by West Virginia Code § 48-9-102a.[9]

Accordingly, to the extent the August 13, 2025, order could be construed to make any rulings as to custody of the minor children, those rulings are vacated. *See Province,* 196 W. Va. at 483, 473 S.E.2d at 904 (1996); *see also In re R.L.*, No. 24-395, 2025 WL 2781690, at *3 (W. Va. Sept. 30, 2025) (memorandum decision) (vacating and remanding for lower court's failure to conduct a proper analysis of 50-50 rebuttable presumption, consideration of limiting factors, and maximizing parenting time); *Kane M. v. Miranda M.*,

---

step is to divide the marital estate between the parties in accordance with the principles contained in [W. Va. Code § 48-7-103]." Syl. Pt. 1, *Whiting v. Whiting*, 183 W. Va. 451, 396 S.E.2d 413 (1990).

[8] The order describes these findings as part of the family court's findings regarding the parties' accumulated marital property and debt.

[9] As the SCAWV has explained, the 50-50 rebuttable presumption is "the *starting point*" for courts making determinations about custodial allocation. *In re D.S.*, 251 W. Va. 466, 472, 914 S.E.2d 701, 707 (2025) (emphasis added). "[W]hen 'determining whether the presumption for an equal (50-50) allocation of physical custody has been rebutted, a court shall consider all relevant factors' listed in West Virginia Code § 48-9-209(f)." *Id.* Furthermore, if the presumption is rebutted, and unless the parties have reached a full agreement, the court must construct a parenting time schedule that maximizes both parents' time with the children yet ensures the children's welfare. *See* W. Va. Code § 48-9-102a.

250 W. Va. 701, 705, 908 S.E.2d 198, 202 (2024) (remanding for an order with sufficient findings on custodial allocation because "a deviation from the 50-50 presumption must be sufficiently explained and justified by the . . . court in its order"); *Fabiano D. v. Dylan Y.*, No. 24-ICA-77, 2024 WL 4590062, at *4 (W. Va. Ct. App. Oct. 28, 2024) (memorandum decision) (vacating a family court's allocation of custodial responsibility where the court "failed to provide sufficient findings of fact and conclusions of law to support its deviation from the presumption [of equal custodial responsibility]" and stressing that "it is essential for . . . courts to articulate their findings and to explain their reasoning for making such findings"); *Sylvia L. v. Gerald P.*, No. 24-ICA-332, 2025 WL 1249409, at *3 (W. Va. Ct. App. April 29, 2025) (memorandum decision) (vacating an order awarding no parenting time to a mother where the court "failed to expressly consider whether the parenting plan maximized Mother's parenting time pursuant to West Virginia Code § 48-9-102a").

To the extent the family court intends to make a custodial or decision-making responsibility determination in its order on remand, the court should be mindful of the statutory requirement of West Virginia Code § 48-9-206(d) (2022) (requiring that "[t]he court's order determining allocation of custodial responsibility shall be in writing, and include specific findings of fact and conclusions of law supporting the determination").

Accordingly, we vacate the August 13, 2025, and September 8, 2025, orders. Upon remand, the family court is directed to enter a new order addressing the applicable statutes and required factors consistent with this decision.

Vacated and Remanded, With Directions.

**ISSUED:** June 30, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White